Jinny Kim (CA Bar No. 208953)
Amelia Evard (CA Bar No. 341940)
Disability Rights Advocates
2001 Center Street, 3rd Floor
Berkeley, California 94704-1204
Tel:      (510) 665-8644
Fax:     (510) 665-8511
Emails: jkim@dralegal.org
           aevard@dralegal.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENA FISHER, KATHI PUGH, and HELEN WALSH<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>Defendant. | Case No. 4:23-cv-4280<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12131, *et seq.*)<br><br>Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, *et seq.*) |

## **INTRODUCTION**

1. Plaintiffs Rena Fischer[1], Kathi Pugh, and Helen Walsh bring this action challenging the City of Berkeley's discrimination against members of its Commission on Disability whose disabilities require that they participate in Commission meetings remotely. Rather than grant these federally required accommodations, the City forces Plaintiffs to open up their private homes to the public as additional Commission meeting locations, despite the dangers to them and aggravations to their health that can result from doing so.

2. The Berkeley Commission on Disability is one of thirty-two boards and commissions that advise the Berkeley City Council on key policy issues. The Commission on

---

[1] Although her legal last name is Fisher, she goes by Fischer.

Disability ("Commission") is "charged with actively promoting the total integration and participation of persons with disabilities into all areas of economic, political, and community life. Membership must be made up primarily of persons who have disabilities." It is particularly ironic that a Commission with this charter to advocate for disabled Berkeley residents, and be composed primarily of disabled people itself, is in fact preventing disabled members from participating in the Commission unless they subject themselves to burdensome, dangerous, and invasive requirements.

3. Defendant's refusal to modify their policy to allow Plaintiffs to remotely attend Commission meetings without burdensome restrictions not required of Commissioners who are able to attend meetings in person violates the City's obligation under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act to make reasonable modifications to policies, practices, or procedures to avoid discrimination based on disability.

4. In addition to violating federal law, Defendant's requirements are dangerous. Plaintiff Walsh is immunocompromised and needs remote attendance in part to limit her exposure to others. Requiring her to allow the public into her home places her in the exact danger she seeks to avoid, exposing her to unpredictable and unknown additional risk of infection. Both Plaintiffs Fischer and Pugh at times must attend Commission meetings remotely from bed—requiring them to allow strangers into their homes, and potentially even bedrooms, during these evening Commission meetings is both dangerous and intrusive and invades their privacy in a manner not required of non-disabled people. Because of their disabilities, this places them in an unreasonably vulnerable position simply to participate in the Commission. Opening Commission members' homes to the public may be dangerous for the public as well, as private homes may not be safe for or accessible to members of the public with disabilities in the same way a public City meeting location is.

5. As set forth in detail below, Defendant has failed to take steps to ensure Ms. Fischer, Ms. Pugh, and Ms. Walsh are provided with the necessary reasonable modifications in order to attend Commission meetings. As a result, Defendant has denied Plaintiffs an opportunity equal to that afforded to non-disabled Commission members to participate in Defendant's programs, services, or activities.

6. Plaintiffs seek all appropriate relief to compel Defendant to permit them to attend Commission meetings remotely, as needed, without public notification of their home addresses or public's invitation to attend Commission meetings from these locations, and to provide additional remedies.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Ms. Fischer, Ms. Pugh, and Ms. Walsh's claims arise under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.

8. Plaintiffs Fischer, Pugh, and Walsh are all residents of Berkeley, California and the acts and injuries complained of herein occurred in Berkeley, California.

9. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the acts constituting violations of the ADA and Section 504 occurred in the Northern District of California, and Ms. Fischer, Ms. Pugh, and Ms. Walsh reside in this district.

## INTRADISTRICT ASSIGNMENT

10. Pursuant to L.R. 3-2(c), this case should be assigned to the Oakland Division of the Northern District of California because these civil claims arose in the County of Alameda.

## THE PARTIES

11. Plaintiff Rena Fischer is a resident of Berkeley who uses an electric wheelchair for mobility. Plaintiff Fischer is a "qualified person with a disability" and a person with "a

disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104 and 29 U.S.C. § 705(20)(B).

12. Plaintiff Kathi Pugh is a resident of Berkeley who uses an electric wheelchair for mobility. Plaintiff Pugh is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104 and 29 U.S.C. § 705(20)(B).

13. Plaintiff Helen Walsh is a resident of Berkeley who is visually impaired, has multiple sclerosis and is immunocompromised. Plaintiff Walsh is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104 and 29 U.S.C. § 705(20)(B).

14. Presently, and at all times relevant to this Complaint, Defendant City of Berkeley is a public entity under Title II of the ADA, 42 U.S.C. § 12131, *et seq*.

15. Because Defendant City of Berkeley receives federal financial assistance in many forms, it is required to comply with Section 504.

## STATEMENT OF FACTS

16. Defendant City of Berkeley has a wide variety of boards and commissions that advise and make recommendations on key policy issues ranging from civic arts to disaster and fire safety. One such commission is the Commission on Disability. In establishing the Berkeley Commission on Disability, Defendant made the following findings: "It is the policy of the City of Berkeley to promote the full integration and participation of persons with disabilities into all areas of economic, political and community life" and "The City of Berkeley is committed to utilizing all available resources and to coordinating efforts towards removing barriers to full integration and participation of persons with disabilities." Berkeley Municipal Code Chapter 3.66.010.

17. The Commission's charter provides that "The City shall provide accommodations for the known physical, sensory or mental disabilities of commission members and other participants in commission activities, including, but not limited to, assistance with reading, writing, communicating and aids such as tape-recorded, Braille or large print materials." Berkeley Municipal Code Chapter 3.66.040(C).

18. On March 4, 2020, Governor Gavin Newsom announced a statewide emergency due to the COVID-19 pandemic and issued executive orders that suspended many of the teleconferencing requirements of the Ralph M. Brown Act including that the teleconference location of each member participating remotely be published and that the teleconference location be accessible to the public. In March 2020, pursuant to the executive orders, the meetings of the Berkeley City Council and all board and commission meetings were conducted remotely.

19. In January 2023, California enacted Assembly Bill (AB) 2449 which provides for "just cause" and "emergency circumstances" exceptions to the Brown Act's teleconferencing requirements of publishing the remote location and opening that location up to the public. In enacting AB 2449, the Legislature determined that remote participation by a commission member in various circumstances is compatible with their service on the commission.

20. For boards or commissions that meet monthly, such as the Commission on Disability, the exceptions in AB 2449 can only be used a total of two times during the calendar year.

21. AB 2449 also requires a commission to implement a procedure for receiving and swiftly resolving requests for reasonable accommodations for individuals with a disability, consistent with the ADA, and to resolve any doubt in favor of accessibility.

22. In enacting AB 2449, the California Legislature determined that remote participation by a commission member with a disability would not fundamentally alter the role of that commission member.

23. Governor Newsom ended the statewide COVID-19 emergency on February 28, 2023. On March 1, 2023, Defendant announced that City Council meetings, all Council committees and the Zoning Adjustments Board would continue to be hybrid but that nearly all board and commission meetings, including the monthly Commission on Disability meetings, would return to only being held in-person.

**Plaintiff Rena Fischer**

24. Ms. Fischer is a member of the Berkeley Commission on Disability. She was appointed in April of 2023 by Councilmember Rashi Kesarwani. Ms. Fischer was motivated to serve on the Commission because of her interest in advocating for improved City infrastructure and sidewalks, particularly regarding safety of the pedestrian right of way for wheelchair and mobility device users and the elderly. She chose to serve on the Commission with the understanding that the Commission would provide any reasonable modifications necessary for her to have access in order to participate equally to Commission members who do not have a disability.

25. Ms. Fischer first requested accommodations to attend the Commission on Disability meetings remotely on or about April 24, 2023. She requested remote attendance because she occasionally must limit the time she spends in her wheelchair due to a pressure sore.

26. On April 24, 2023, the Deputy Public Works Director approved Ms. Fischer's request, but required that her personal home address be published on the public Commission meeting agenda and that the Commission agenda be posted at her home. Defendant also required that she allow members of the public into her home so that the public could participate in the meeting and give public comment there, with communication technology provided by Ms. Fischer.

27. Ms. Fischer requested clarification about these limitations, and the requirement that her one-bedroom apartment become a "remote location" open to the public while she attends Commission meetings from bed.

28. The Deputy Public Works Director explained to Ms. Fischer that this was required in order to approve her remote attendance, and Defendant could not waive these requirements even as an accommodation for a person with a disability.

29. Ms. Fischer must at times attend Commission meetings remotely from bed due to her disability—requiring she allow people she does not know into her home, and even into her bedroom, during these evening Commission meetings is both dangerous and intrusive and invades her privacy in a way not required of non-disabled Commission members.

30. The City recognized Ms. Fischer's need to attend Commission meetings remotely because of her disability, and Defendant informed her they would pay for a personal attendant to facilitate remote participation from her apartment for the May 3, 2023 Commission meeting. This did not diminish the intrusion to her privacy, nor the potential danger to Ms. Fischer as she is unable to independently transfer from her bed.

**Plaintiff Kathi Pugh**

31. Ms. Pugh is a retired attorney and served as firmwide pro bono counsel for a large international law firm for 23 years. Ms. Pugh is a member of the Berkeley Commission on Disability who was appointed in April of 2023 by Councilmember Kate Harrison. She was motivated to serve on the Commission in order to help make the City of Berkeley more accessible for all. She chose to serve on the Commission with the understanding that the Commission would provide any reasonable modifications necessary for her to have access in order to participate equally to Commission members who do not have a disability.

32. Ms. Pugh first requested accommodations to attend the Commission on Disability meetings remotely in or around April 2023.

33. Ms. Pugh requested remote attendance because she was bedridden at the time due to an ongoing pressure sore because of her mobility disability. Defendant approved her request but required that her personal home address be published on the public Commission meeting agenda and that the Commission agenda be posted at her home. Defendant also required that she allow members of the public into her home so that the public could participate in the meeting and give public comment there, with communication technology provided by Ms. Pugh.

34. Since Ms. Pugh would be participating in the meeting from her bed in her bedroom, members of the public would need to join her there in order to participate in the meeting on her device. Requiring that she allow any member of the public who wished to enter into her home during those evenings when she needs to stay in bed is both dangerous and intrusive, and invades her privacy in a way not required of non-disabled Commission members.

35. On July 9, 2023, Ms. Pugh notified the ADA Program Coordinator and Commission on Disability Secretary that she would need to attend the July 12, 2023, Commission meeting remotely due to the pressure sore that required she limit her time sitting.

36. The ADA Program Coordinator and Commission on Disability Secretary, Thomas Gregory, said it was not possible to accommodate Ms. Pugh's request because it was too late for the meeting agenda to be modified to publicize her address. In the future, she needed to notify him at least 72 hours in advance not including the weekend hours. Mr. Gregory did not allow Ms. Pugh to remotely attend the July 2023 meeting even though remote access had already been arranged to allow a member of the public to participate.

**Plaintiff Helen Walsh**

37. Ms. Walsh is a longtime disability activist, particularly in the areas of media and broadcasting. Ms. Walsh first decided to join the Berkeley Commission on Disability to represent disability community perspectives in City planning, particularly on issues of parking and bike infrastructure. She also hoped to provide representation on the Commission of people

with multiple and hidden disabilities. Ms. Walsh was appointed to the Commission in November 2013 by Councilmember Darryl Moore. Ms. Walsh is visually impaired, has multiple sclerosis and is immunocompromised. She chose to serve on the Commission with the understanding that the Commission would provide any reasonable modifications necessary for her to have access in order to participate equally to Commission members who do not have a disability.

38. Ms. Walsh first requested accommodations to attend the Commission on Disability meetings remotely on February 1, 2023.

39. Ms. Walsh requested remote attendance because both her multiple sclerosis diagnosis and the medication she takes for her disability cause her to be immunocompromised and vulnerable to severe COVID outcomes.

40. Defendant's Deputy Director of Public Works approved Ms. Walsh's request on February 23, 2023, but required that her personal home address be published on the public Commission meeting agenda and that the Commission agenda be posted at her home. Defendant also required that she allow members of the public into her home so that the public could participate in the meeting and give public comment there, with communication technology provided by Ms. Walsh.

41. Ms. Walsh's request to attend the Commission meeting remotely is meant to limit her exposure to the public—requiring members of the public be allowed into Ms. Walsh's home defeats its very purpose.

42. Defendant offered to hire a personal attendant to assist with letting people into her home and facilitating their remote participation from inside her house. This would not work to limit Ms. Walsh's exposure to the public and would in fact result in more people being present inside her home, exposing her to risks of infection of both COVID and other airborne, contagious illnesses it is imperative she avoid.

43. Ms. Walsh was the Acting Chair of the Commission and was not permitted to attend its meetings by using her approved modification of remote attendance.

44. On June 16, 2023, Ms. Walsh submitted a grievance to Defendant about the reasonable modification needed to participate in the Commission on Disability.

45. On July 3, 2023, Defendant's ADA Program Coordinator and Commission on Disability Secretary Thomas Gregory informed Ms. Walsh that based on her medical needs, Defendant would grant an accommodation and disregard the requirements that her address be posted publicly, and the public allowed into her home, in order for her to attend Commission meetings remotely. However, Defendant treated this as a separate and additional accommodation from the one that had already been granted, and required that Ms. Walsh provide additional medical documentation, despite it being unnecessary, intrusive and burdensome for Ms. Walsh to do so.

46. Ms. Walsh has thus been unable to attend Commission meetings remotely. She has been forced to functionally give up serving as Commission Vice-Chair as a result and is at risk of exceeding the permitted number of absences, putting her at risk of losing her seat on the Commission altogether.

**FIRST CLAIM FOR RELIEF**

**Violation of Title II of the Americans with Disabilities Act
42 U.S.C. § 12131, *et seq.***

47. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

48. Title II of the ADA provides that individuals with disabilities may not be "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity" nor may they be "subjected to discrimination by any such entity." 42 U.S.C. § 12132.

49. In addition, a public entity may not, on the basis of disability, "[d]eny a qualified individual with a disability the opportunity to participate as a member of planning or advisory boards[.]" 28 C.F.R. § 35.130(b)(1)(vi).

50. Public entities are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

51. In addition, public entities have a duty to ensure that communications with persons with disabilities are "as effective as communications with others." *Id*. § 35.160(a)(1).

52. Such public entities "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id*. § 35.160(b)(1).

53. Further, it is unlawful for public entities to discriminate against any individual because that individual has opposed any act or practice of discrimination under Title II. *Id*. § 35.134(a). It is unlawful for any public entity to "coerce, intimidate, threaten, or interfere with" an individual on the basis of her exercise of any right granted under Title II, including the rights to reasonable accommodations and effective communication. *Id*. § 35.134(b).

54. Defendant is a public entity under Title II of the ADA.

55. Commission membership and Commission meetings are services, programs, or activities of Defendant.

56. Ms. Fischer, Ms. Pugh, and Ms. Walsh are individuals with disabilities under the ADA. Their disabilities substantially interfere with major life activities.

57. Ms. Fischer, Ms. Pugh, and Ms. Walsh were appointed by their City Council member to serve as members of the Commission and thus are qualified individuals entitled to the protections of the ADA.

58. Defendant has failed and continues to fail to meet their obligations to provide Ms. Fischer, Ms. Pugh, and Ms. Walsh with opportunities that are equal to those provided to Commission members without disabilities. Defendant has excluded them from participation in and denied them the benefits of their services, programs, or activities and have denied them the opportunity to participate as a member of the Commission.

59. Defendant has failed to reasonably modify their policies, practices, and procedures as necessary to accommodate Ms. Fischer, Ms. Pugh, and Ms. Walsh.

60. Defendant's actions constitute discrimination on the basis of disability in violation of the ADA, in that they have:

   a. failed to maintain policies and procedures to ensure compliance with Title II, specifically policies that provide equal access to individuals with disabilities;

   b. failed to provide reasonable modifications of policies, practices, and procedures to prevent discrimination; and

   c. denied Plaintiffs access to information given to other Commission members.

61. Defendant's failure to meet their obligations to Ms. Fischer, Ms. Pugh, and Ms. Walsh constitutes an ongoing and continuous violation of the ADA and its supporting regulations. Unless restrained from doing so, Defendant will continue to violate the ADA. Unless enjoined, Defendant will continue to inflict injuries for which Ms. Fischer, Ms. Pugh, and Ms. Walsh have no adequate remedy at law.

62. Unless the requested relief is granted, Ms. Fischer, Ms. Pugh, and Ms. Walsh will suffer irreparable harm in that Defendant's discrimination deters them from continuing to fully

participate as members of the Commission, despite their long histories as disability advocates and desire of the disability community for them to serve on the Commission.

63. The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

64. Ms. Fischer, Ms. Pugh, and Ms. Walsh are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Violations of § 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 794

65. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

66. Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

67. Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . ." *Id.* § 794(b)(1).

68. Such federally funded programs and activities must provide aids and services that "afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 34 C.F.R. § 104.4(b)(2).

69.     Furthermore, recipients of federal funds must provide individuals with disabilities aids, benefits, and services that are as effective as those provided to persons without disabilities. *Id.* § 104.4(b)(1)(iii).

70.     Defendant receives federal grants, contracts, and other financial assistance, thereby subjecting themselves to the requirements of Section 504.

71.     Ms. Fischer, Ms. Pugh, and Ms. Walsh all have disabilities and were appointed by their City Councilors to serve on the Commission. They are therefore qualified individuals with a disability under Section 504.

72.     Defendant has, solely by reason of their disabilities, excluded Ms. Fischer, Ms. Pugh, and Ms. Walsh from participation in and denied them the benefits of or otherwise discriminated and retaliated against them in their facilities, services, programs, or activities. Defendant's violation of Section 504 and its regulations has denied and continues to deny Ms. Fischer, Ms. Pugh, and Ms. Walsh an equal opportunity to participate in membership on the Commission.

73.     Defendant's actions constitute discrimination on the basis of a disability in violation of Section 504, in that Defendant has:

    a.  failed to maintain policies and procedures to ensure compliance with Section 504, specifically policies that provide equal access to individuals with disabilities;

    b.  failed to provide reasonable modifications of policies, practices, and procedures;

    c.  denied Plaintiffs access to information given to other Commission members.

74.     By failing to meet their obligations to provide persons with disabilities with opportunities to participate and serve that are equal to those provided to members of the Commission without disabilities, Defendant has and is excluding Ms. Fischer, Ms. Pugh, and Ms. Walsh from fully participating in and enjoying the benefits of the services, programs, or

activities offered by the Commission. Ms. Fischer, Ms. Pugh, and Ms. Walsh are entitled to injunctive relief, as well as reasonable attorneys' fees, costs and expenses.

75. Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

## DECLARATORY RELIEF

76. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

77. A present and actual controversy exists between Plaintiffs and Defendant concerning their rights and respective duties. Plaintiffs contend that Defendant violated their rights under Title II of the Americans with Disabilities Act. Plaintiffs are informed and believe, and thereon allege, that Defendant denies these allegations. Declaratory relief is therefore necessary and appropriate.

78. Plaintiffs seek a judicial declaration of the rights and duties of the respective parties.

## INJUNCTIVE RELIEF

79. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

80. No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

## PRAYER FOR RELIEF

81. WHEREFORE, Plaintiffs Rena Fischer, Kathi Pugh, and Helen Walsh respectfully request that this Court:

   a. Grant declaratory relief;

   b. Enjoin Defendant from engaging in the unlawful discrimination complained of herein;

c. Compel Defendant to provide reasonable modifications to Plaintiffs for Commission on Disability meetings and to permit remote attendance as needed for Commission meetings;

d. Grant all injunctive relief necessary to bring Defendant into compliance with the ADA and Section 504;

e. Order Defendant to pay Plaintiffs' reasonable attorneys' fees, costs and litigation expenses; and

f. Grant such other and further relief as the Court may deem just and proper.

DATED: August 22, 2023        Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

*/s Jinny Kim*
Jinny Kim
Attorney for Plaintiffs